IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

NOEL JERMAINE BENDER,

    Petitioner,

vs.

IOWA DEPARTMENT OF
CORRECTIONS and CHRIS TRIPP,
Warden, Iowa State Penitentiary,

    Respondent.

No. 20-CV-4045-LRR

**ORDER**

| | | |
|---|---|---|
| I. | INTRODUCTION. | 1 |
| II. | BACKGROUND AND PROCEDURAL HISTORY. | 2 |
| | A.     *Trial and Conviction.* | 2 |
| | B.     *Direct Appeal.* | 4 |
| | C.     *Postconviction Relief.* | 5 |
| | D.     *Federal Habeas.* | 5 |
| III. | STANDARD OF REVIEW | 6 |
| IV. | DISCUSSION. | 7 |
| V. | CERTIFICATE OF APPEALABILITY. | 10 |
| VI. | CONCLUSION. | 11 |

## I. INTRODUCTION

The matter before the court is Petitioner Randy Noel Jermaine Bender's Amended § 2254 pro se Petition for Writ of Habeas Corpus ("Motion") (docket no. 6), which the Clerk of Court received on October 15, 2020.

## II. BACKGROUND

### A. Trial and Conviction

A jury found Bender guilty of domestic assault as a habitual offender but the Iowa Court of Appeals reversed his judgment and sentence and remanded the case for a new trial because Bender "proved his ineffective-assistance of counsel claim." *State v. Bender*, No. 15-1595, 2016 WL 6396227, at *3 (Iowa Ct. App. Oct. 26, 2016).

Bender chose to have a bench trial on remand. *State v. Bender*, 918 N.W. 2d 501, 2018 WL 1633514 at *1-2 (Table) (Iowa Ct. App. 2018). The district court found him guilty and convicted Bender for domestic assault, third or subsequent offense, as a habitual offender, in violation of Iowa Code sections 708.2A(1) and 708.2A(4), 902.8, 902.9. *Id.* The district court summarized the facts in its preliminary findings:

> Defendant and Gayle Banks (hereinafter Banks) met for the first time in December 2014 when Defendant was doing construction work for L & L at McDonald's in Sioux City. Banks was with friends and randomly and almost as a "dare" to herself started talking to Defendant and got his name and number. Defendant and Banks then began texting and communicating with each other by phone. Defendant at that time was on probation or parole and was placed at the Residential Treatment Facility operated by the Iowa Department of Corrections in Sioux City.
>
> After a few weeks, Defendant and Banks began seeing each other on weekends. Defendant was being given weekend furloughs from the RTF to be spent at his father's home in Sioux City. Banks eventually started to stay overnight with Defendant at his father's house during these weekend furloughs. Banks at that time was living with her three children in an apartment located at 1120 Second Street SE, Apartment A-4 in Le Mars, Plymouth County, Iowa.
>
> According to Banks, she and Defendant during this time in early 2015 began to talk about their future. In particular, they started talking about moving to Colorado, starting a landscape business, and basically beginning a life together and with Banks's children as soon as Defendant completed the RTF program and his probation requirements.
>
> As a result of an RTF rules violation, Defendant was told his anticipated completion and release date would be pushed back. In mid-February, Defendant then effectively absconded from the RTF – he left in the morning for work and did not return. According to Banks, Defendant

just showed up at her apartment one day in mid-February. Although Banks knew that Defendant had been in the RTF, she allowed Defendant to stay at her apartment; and, according to her, their relationship continued to grow after that time. In particular, they continued to talk about their future and, at some time, even discussed the possibility of marriage. While staying at the apartment, Defendant was introduced to and started to form a relationship with Banks's children. When Banks's grandmother died, Defendant travelled to and stayed with her in Georgia for two to three weeks. Although Defendant could not be out in public often and could not apply for work for fear of getting caught and sent back to the RTF, he met Banks's parents and did some work for cash for her father's construction business.

Approximately two weeks after Defendant began staying at the apartment, Banks and Defendant saw Defendant's name and photo in the paper listed as one of Siouxland's "Most Wanted." According to Banks, she then began to tell and ask Defendant to turn himself in, accept the consequences, and then complete what he needed to do so they could move to Colorado as planned. According to Banks, Defendant continued to stay with her at the apartment while deciding if or when to do so.

Defendant was still at the apartment on April 28, 2015. Banks claims that on that day she returned to the apartment and began arguing with Defendant about what she believed to be porn watched by Defendant on his phone. Banks told Defendant he needed to pack his stuff and leave. Banks claims that Defendant then basically "snapped" and began to hit her; threw her up against the wall; and also punched her several times after pushing her on to the floor. Defendant then left the apartment. Banks went to the apartment directly above hers where her friend and neighbor Makayla Bootsma lived, and Ms. Bootsma called 911.

Le Mars police officers went to the apartment building, looked inside Banks's apartment, and also spoke to Banks inside Bootsma's apartment. Based on the description given by Banks, Defendant was then located and apprehended at a nearby cemetery. Defendant was thereafter arrested and charged with the crime of domestic abuse assault in the above-captioned matter.

*Iowa v. Bender*, Criminal No. SRCR0116095 (docket no. 14-1 at 95-97). The district court concluded that "[Bender] not only did an act that placed [the victim] in fear of physical contact, he actually physically assaulted her" and that "[Bender] had the apparent

3

ability to do this act because he actually did them." *Id.* at 102. The district court also concluded that Bender and the victim were household members. *Id.* at 102-06.

The Iowa Court of Appeals summarized the evidence establishing Bender and the victim as household members as follows:

> The district court made detailed fact findings concerning this element, considering evidence detracting from a finding of cohabitation and including credibility findings where the evidence was conflicting. Preliminarily, the court found "[Bender] and [the woman] were engaged in sexual relations." But the court rejected Bender's assertion that the relationship was purely sexual. The court found: (1) Bender "was staying or otherwise living with [the woman] for at least three weeks, if not more"; (2) the two "were more than just roommates living together at the same place during this time"; (3) the couple was "developing a romantic relationship"; (4) Bender "also was developing a relationship with [the woman's] three children"; (5) Bender "did have … personal property items at the apartment," including "phone, tablet, and other such accessories; personal hygiene toiletry items; electronic cigarette/vaporizer items; and prior mail/documents"; (6) "[a]lthough it was not a 50/50 split, [Bender and the woman] also were essentially sharing expenses"; and (7) "there was no other place or location where [Bender] lived or resided." The court determined Bender "spent the majority of his time, including the majority of overnights, at [the woman's] apartment from mid-February until the day of the assault on April 28, 2015, and was staying at the apartment continuously for approximately three weeks prior to and to the day of the assault." While the court acknowledged the living arrangement may not have been "permanent," the court stated permanency was not required.
> 
> The district court's fact findings are supported by substantial evidence. We affirm Bender's judgment and sentence.

*Bender*, 2018 WL 1633514 at *1-2 (Table) (Iowa Ct. App. 2018).

### B. Direct Appeal

Bender timely appealed, arguing that the sufficiency of the evidence did not support a finding that the woman was a household member. *Id.* at *1. The appellate court concluded that the district court's fact findings are supported by substantial evidence. *Id.* at *2. On April 4, 2018, the Iowa Court of Appeals affirmed the

4

conviction. *Id.* at *1. Bender appealed, and on July 12, 2018, the Iowa Supreme Court denied further review of Bender's case. *State v. Bender*, No. 17-0646 (Iowa Sup. Ct. 2018).

### C. Post-conviction relief

Bender argued that substantial evidence did not support his conviction at the outset of PCR proceedings. *See Bender v. State*, No. PCCV038540 (docket no. 13-11). The PCR district court granted the State's motion for summary judgement and denied postconviction relief because on direct appeal the Iowa Court of Appeals determined substantial evidence supported the conviction. *Id.* On appeal from that decision, Bender argued that trial counsel was ineffective for failing to argue that trial counsel was ineffective regarding his colloquy with the trial court concerning his admission to prior convictions.[1] *Bender v. State*, 952 N.W.2d 901 (Table), 2020 WL 5651681 at *1 (Iowa Ct. App. 2020). The Iowa Court of Appeals found that trial and subsequent counsel were not ineffective for failing to raise the prior convictions issue; also, Bender was not prejudiced.[2] *Id.* at *2. The Iowa Court of Appeals affirmed the PCR district court. *Id.* at *2. Bender did not seek further review by the Iowa Supreme Court.

### D. Federal Habeas

On August 17, 2020, Bender mailed his first petition for habeas corpus relief (docket no. 1) and on August 21, 2020, the petition was filed. He also filed a pro se motion to amend and pro se amended petition (docket nos. 4 & 6). The court granted Bender's pro se motion to amend (docket no. 7). Upon review of the petition, the court ordered the State to file the state record and respond to the petition. *Id.* The court

---

[1] Also, Bender's initial PCR action failed because Bender did not provide the record of the criminal file on appeal. *Bender v. State*, 949 N.W.2d 661 (Table), 2020 WL 4499768 (Iowa Ct. App. 2020).

[2] The appellate court did not address whether there was sufficient evidence because Bender did not raise it (*see generally* docket no. 13-17).

5

understands Bender's petition to assert one claim: the evidence was insufficient to support his conviction because he and the victim were not household members (docket no. 6 at 5). On July 29, 2021, the State filed the state court record (docket nos. 13 & 14), and, also on July 29, 2021, the State filed a response (docket no. 15). The court entered a briefing schedule (docket no. 17). On December 27, 2021, the State filed a brief ("State's Brief") (docket no. 20). The State argues that Iowa courts reasonably held the evidence was sufficient to allow a rational jury to conclude Bender cohabitated with the victim.[3] State's Brief at 11. Bender filed a reply brief (docket no. 21), which the Clerk of Court received on January 3, 2022 and a supplement (docket no. 23), which the Clerk of Court received on January 10, 2022.[4]

### III. STANDARD OF REVIEW

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). However, 28 U.S.C. § 2254 "sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Section 2254(a) provides that a federal court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

---

[3] Based on the appellate court's decision on direct appeal, the PCR district court granted the State's motion for summary judgment. *Bender v. State*, No. PCCV038540 (docket no. 13-11). Bender failed to raise the substantial evidence issue in his appeal of the PCR district court's decision; thus, the issue is unexhausted. *See Welch v. Lund*, 616 F.3d 756, 758–59 (8th Cir. 2010). Regardless, the State failed to notify the court of this issue and also explicitly waived the benefit of the exhaustion defense (*see* docket nos. 15 at 3; 20 at 7-18). Because the State waived the defense, the court addresses the merits. *Hampton v. Miller*, 927 F.3d 429, 431 (8th Cir. 1991); *Fruit v. Norris*, 905 F.2d 1147, 1148 n.3 (8th Cir. 1990).

[4] Additionally, the Clerk of Court received correspondence from Bender in March 2022 and October 2022 (docket nos. 24 & 25) which the court reviewed.

2254(a). A federal court's review of a state court decision under § 2254 is deferential. *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). A state court decision on the merits should not be overturned unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A petitioner must also comply with procedural rules. First, a statute of limitations applies to habeas petitions: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court." 28 U.S.C. § 2244(d)(1). Second, a petitioner must exhaust his federal claims in the state courts. *Welch v. Lund*, 616 F.3d 756, 758–59 (8th Cir. 2010) ("Therefore, an Iowa prisoner whose appeal is deflected to the Iowa Court of Appeals must file an application for further review in the Supreme Court of Iowa to exhaust his claims properly in the state courts.").

Additionally, *Strickland v. Washington*, 466 U.S. 668, 687 (1984) requires an individual to establish that his counsel's performance was deficient and that the deficiency caused him prejudice. "[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 687-88). To show prejudice, an individual must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard is even narrower when a federal court reviews a state court action in the habeas context. The combined standard from Section 2254 and *Strickland* "is not whether counsel's actions were reasonable," but instead "whether there is any

7

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## IV. DISCUSSION

Bender's claim does not rely on a new rule of constitutional law or alleged facts entitling him to habeas relief, nor does Bender establish by clear and convincing evidence that no reasonable factfinder would have found him guilty. Thus, the court can resolve the claims on the briefs without an evidentiary hearing. *See* 28 U.S.C. § 2254(e); *see also Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (discussing constraints on district court's discretion to hold an evidentiary hearing). After a thorough review of the record, including the trial and the post-conviction trial transcripts, the court concludes that the Petition must be denied.

Bender argues that substantial evidence does not support the district court's guilty verdict beyond a reasonable doubt because he was not a household member in the victim's home (docket no. 6 at 5). In support of his argument that the evidence does not show that he was a household member, he asserts the following: (1) his residence was the Sioux City Residential Facility although he was out of place of assignment; (2) victim's testimony from June 23, 2015; (3) he and the victim did not hold themselves out as husband and wife; (4) he and the victim did not share income or expenses; (5) he and the victim did not have children; and (6) his name was not on the victim's lease. *Id.* The State waives its exhaustion argument, (docket no. 15 at 3), and instead argues that the Iowa courts reasonably held the evidence was sufficient to allow a rational jury to conclude Bender cohabitated with the victim (docket no. 20 at 11). The State asserts that a reasonable appellate jurist could hold the evidence sufficient to support a fact-finder's conclusion that Bender and the victim were household members. *Id.* at 12.

A federal review of a state court's evaluation of the sufficiency of the evidence "is extremely limited." *Skillicorn v. Luebbers*, 475 F.3d 965, 977 (8th Cir. 2007). "Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence

8

in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Garrison v. Burt*, 637 F.3d 849, 854-55 (8th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard recognizes that it is the province of the fact-finder, not this court, 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Skillicorn*, 475 F.3d at 977 (quoting *Jackson*, 443 U.S. at 319). Thus, "the only question under *Jackson*, is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012).

The court concludes that the trial and appellate courts rationally concluded that there was sufficient evidence to find that Bender was a household member. First, the district court addressed all six of the issues that Bender raises in its findings and conclusions at trial. *Iowa v. Bender*, Criminal No. SRCR0116095 (docket no. 14-1 at 102-103). In making those findings and conclusions it considered: (1) that Bender was placed in a residential facility, (2) that it found the victim's testimony credible, (3) that the relationship between Bender and the victim was not that of husband and wife but a romantic one; (4) that although it was not a 50/50 split, Bender and the victim shared expenses; (5) that Bender had begun developing a relationship with the victim's three children; and (6) that the apartment was leased only in the victim's name. *Id.* Accordingly, the district court thoroughly considered the evidence before it and determined that Bender was a household member. It is not for the court to act as the fact finder in the district court's place. Nor can the court say that the finding falls below the threshold of bare rationality. Further, Bender challenged the sufficiency of the evidence as to the household members element on appeal and the Iowa Court of Appeals upheld the district court's decision reviewing these same factors as previously quoted. The appellate court found that the district court's findings were supported by substantial evidence to establish Bender was a household member. Bender has failed to show that

9

the appellate court's decision was unreasonable or that it fell below the threshold of bare rationality. In short, nothing that Bender argues here shows that his conviction lacked substantial evidence; rather, the record shows that the Iowa courts rationally found and concluded that substantial evidence supported the finding that he was a household member of the victim. Bender's argument is meritless. Thus, the Petition is denied.

## V. CERTIFICATE OF APPEALABILITY

"In a habeas corpus proceeding . . . before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held." 28 U.S.C. § 2253(a). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. . . ." *Id.* § 2253(c)(1). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Criminal Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may only issue if a petitioner "has made a substantial showing of the denial of a constitutional right." *See Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 522. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (*citing Flieger v. Delo,* 16 F.3d 878, 882–83 (1994)); *see also Miller–El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller–El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed

10

on procedural grounds without reaching the underlying constitutional claim, "the [petitioner must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, Bender failed to make the requisite "substantial showing" with respect to the claims that he raised in his application for a writ of habeas corpus. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the court will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253. If Bender desires further review of his claims, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## VI. CONCLUSION

For the reasons set out above:

1. Bender's Amended § 2254 pro se Petition for Writ of Habeas Corpus (docket no. 6) is **DENIED** and the case **DISMISSED**.
4. A certificate of appealability **DENIED**.

**DATED** this 6th day of July 2023.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA